2011 VT 71

Pamela ALLEN-PENTKOWSKI v. DEPARTMENT OF LABOR (Liebert Engineering, Inc., Employer)

[26 A.3d 55]

No. 10-167

¶ 1. July 6, 2011. Plaintiff appeals the Vermont Employment Security Board's (Board) determination that she was dis- charged from work for actions constitut- ing misconduct, a decision which tempo- rarily disqualified plaintiff from collecting unemployment compensation benefits. On appeal, plaintiff argues that her inability to work the hours requested by her em- ployer was not misconduct within the meaning of the statute and should not disqualify her from unemployment com- pensation benefits. We hold the employer failed to carry its burden of proof and reverse.

¶ 2. Prior to her discharge, plaintiff had worked for over five years at Liebert Engineering, Inc. as a computer assisted design operator. She had originally been employed part-time but was offered a full-time position on November 19, 2007. The employment offer did not include a specific work-schedule requirement. Af- ter accepting the full-time position in November 2007, plaintiff worked Monday through Friday from 7:00 a.m. to 3:30 p.m. and maintained this schedule for roughly two years. However, in the fall of 2009, demand for plaintiff's work began to slow. In order to keep plaintiff on staff, her immediate supervisor proposed she take on some of the company's adminis- trative duties. Specifically, on Tuesdays, Wednesdays, and Thursdays plaintiff would be required to handle the compa- ny's front desk, which entailed answering phones and greeting clients during busi- ness hours, 8:00 a.m. to 5:00 p.m. The supervisor first proposed this arrange- ment orally on September 28, 2009, and followed up with an e-mail delineating the specifics of the change the same day. Plaintiff agreed to perform the new duties but expressed concern about the pro- posed hours. She claims she told her supervisor that she could make the re- quested change in her hours after she had her baby, but until then, could not work the extra hour beyond 4:00 p.m. on the three days requested.* At this time, plain- tiff was a single mother of a fifteen-year- old and was several months into a high- risk pregnancy. Plaintiff was worried about the added strain on her pregnancy because of the longer hours, and she felt uncomfortable leaving her fifteen-year- old daughter unsupervised after school. Plaintiff began performing the new ad-

_____

* The parties presented conflicting evi- dence at the hearing. In fact, the admin- istrative law judge (ALJ) noted at the conclusion of testimony that it was "un- precedented" for the parties to have such "different credible recollections of what occurred." In his findings, the ALJ ac- knowledged that plaintiff "insists that she discussed" with her employer the reasons she could not work beyond 4:00 p.m. He also recounted that the company presi- dent could not "recall ever discussing the particulars" with plaintiff, and her direct supervisor claimed he "never received a definitive answer."

ministrative duties, and working 7:30 a.m. to 4:00 p.m. on the requested days. However, her supervisor told her that if she needed to leave before 5:00 p.m., then "other arrangements [would] need to be made." In response, plaintiff sent an e-mail to the president of the company, with a subject line entitled "Harassment." In the e-mail, plaintiff explained she could not work until 5:00 p.m., that her supervisor would not listen to her, and that she felt harassed by his repeated insistence. The president, concerned with the content and tone of the e-mail, met with plaintiff alone in his office on October 27, 2009. The president admits that during that meeting plaintiff stated that the new schedule made it "a long day" and that she was concerned about her fifteen-year-old daughter. The president's and plaintiff's accounts differ as to who began shouting, but a verbal disagreement arose, and eventually plaintiff went home for the day.

¶ 3. The following morning, October 28, 2009, the president met with the supervisor and instructed him "to speak to [plaintiff] about the encounter that [plaintiff and the president] had the afternoon before." The supervisor called plaintiff into his office, and she declined to speak to him about it, stating the matter was between her and the president. The supervisor relayed this statement to the president. The president responded that the harassment issue was between plaintiff and the supervisor and told the supervisor to "settle the matter" concerning plaintiff's schedule. The supervisor returned to his office, where plaintiff was waiting, and she reiterated her inability to work those hours. Hearing this exchange, the president came from his office and joined the meeting, telling plaintiff that "can't is equal to refusal, refusal is reason for termination," at which point, he discharged the plaintiff.

¶ 4. Plaintiff filed for unemployment compensation benefits, but the claims adjudicator determined the nature of plaintiff's discharge from her employer was misconduct connected with her work. As a result, she was disqualified from receiving benefits for the weeks ending October 31, 2009 through December 26, 2009. Plaintiff appealed this decision to an administrative law judge (ALJ), who reversed, holding that refusal to work a unilaterally altered schedule was not per se insubordinate. Defendant appealed to the Board, which reversed the ALJ, finding a flat refusal to work and held that this was sufficient to constitute misconduct. Plaintiff appealed the Board's decision to this Court.

¶ 5. "This Court must uphold the Board's decision unless it can be demonstrated that the findings and conclusions were erroneous." *Trombley v. Dep't of Emp't & Training*, 146 Vt. 332, 334, 503 A.2d 537, 539 (1985). "This Court cannot disturb the findings of the Board if there is credible evidence to support them even if there is substantial evidence to the contrary." *Strong v. Dep't of Emp't & Training*, 144 Vt. 128, 129-30, 473 A.2d 1170, 1171 (1984).

¶ 6. Vermont's unemployment compensation statute reads in pertinent part:

(a) An individual shall be disqualified from benefits:

(1) For not more than 15 weeks nor less than six weeks immediately following the filing of a claim for benefits . . . if the commissioner finds that:

(A) He or she has been discharged by his or her last employing unit for misconduct connected with his or her work.

21 V.S.A. § 1344. Thus, if an employer discharges an employee for "misconduct connected with his or her work" the employee may be denied unemployment compensation for anywhere between six to fifteen weeks. This Court has defined misconduct sufficient to constitute disqualification under § 1344 as "substantial disregard of the employer's interest, either wilful or culpably negligent." *Johnson v. Dep't of Emp't Sec.*, 138 Vt. 554, 555, 420 A.2d 106, 107 (1980) (per curiam) (quotation omitted). In instances of employee discharge for misconduct, "[t]he burden of proof is on the employer to establish misconduct." *Mazut v. Dep't of Emp't & Training*, 151 Vt. 539, 541, 561 A.2d 1362, 1364 (1989). The sole issue upon appeal is whether there is credible evidence to support the conclusion that plaintiff's behavior constituted misconduct within the meaning of 21 V.S.A. § 1344(a)(1)(A).

¶ 7. This Court has held that refusal to perform certain tasks is not necessarily misconduct disqualifying the employee from unemployment compensation. See *Johnson*, 138 Vt. at 555, 420 A.2d at 107. In *Johnson*, an employee was discharged from his employment at a lumber company and was denied unemployment compensation because the claims examiner found he had been discharged for misconduct connected with his work. *Id.* at 554-55, 420 A.2d at 106-07. On appeal, the Board found that "the claimant occasionally mishandled materials, refused to perform certain tasks, and argued with the foreman and the owner." *Id.* at 555, 420 A.2d at 107. However, the Board also found that "the employer had failed to establish that these acts resulted from anything other than misunderstanding of the job requirements, and an honest concern for the safety of the motor vehicles claimant was required to operate." *Id.* For these reasons, the Board concluded that the legal standard for disqualifying misconduct had not been met. *Id.* We

affirmed, explaining that the "employer ha[d] proved that the employee was balky and argumentative, but not that he harbored a wilful disregard of the employer's interests." *Id.* at 556, 420 A.2d at 107.

¶ 8. Here, plaintiff contends that she told her employer she could not work the additional hour three days a week because of her medical condition — a high risk pregnancy — and because she was concerned about the well-being of her fifteen-year-old daughter. The employer claims it did not know the reason for plaintiff's refusal to work the additional hour, but it is the employer's burden to prove disqualifying misconduct. *Mazut*, 151 Vt. at 541, 561 A.2d at 1364. At most, defendant has demonstrated that plaintiff was "balky," but has failed to show that plaintiff's actions arose from "anything other than [a] misunderstanding of the [newly imposed] job requirements." *Johnson*, 138 Vt. at 555, 420 A.2d at 107. No evidence has been presented which suggests that plaintiff acted out of substantial willful or negligent disregard for her employer's interest. In fact, the evidence shows that plaintiff attempted to accommodate her employer's workflow by staying at work until 4:00 p.m. and accepting the additional administrative duties requested. Further, she testified before the ALJ to her willingness to work until 5:00 p.m. after she had given birth. As we explained in *Johnson*, "[m]isconduct that is sufficient for discharge is not necessarily sufficient to require a disqualification from benefits under the Unemployment Compensation Act." *Id.* at 556, 420 A.2d at 107. Plaintiff's inability to work a new schedule may have been sufficient to warrant discharge from her job, but it was not misconduct disqualifying her from unemployment compensation benefits. See *Kuhn v. Dep't of Emp't Sec.*, 134 Vt. 292, 294, 357 A.2d 534, 535 (1976) ("[T]here is a clear-cut distinction between conduct which may be legitimate grounds for discharge and that which

constitutes misconduct. The distinction is an essential one.").

*Reversed.*